DAWN SESTITO (S.B. #214011)
dsestito@omm.com
JONATHAN SCHNELLER (S.B. #291288)
jschneller@omm.com
LAUREN KAPLAN (S.B. #294703)
lkaplan@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, California  90071-2811
Telephone:    (213) 430-6000
Facsimile:    (213) 430-6407

*Counsel for Plaintiff Exxon Mobil Corporation*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>LAUREN SANCHEZ, in her official capacity as Chair of the California Air Resources Board, et al.,<br><br>                    Defendants. | Case No. 2:25-CV-03104-DJC-JDP<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR TEMPORARY RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Proposed Hearing Date:  November 20, 2025<br>Proposed Hearing Time:   1:30 p.m.<br>Courtroom:  7<br>Judge:   Daniel J. Calabretta |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on November 20, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA 95814, Plaintiff Exxon Mobil Corporation will and hereby does move the Court for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b) and L.R. 231, prohibiting Defendants from implementing or enforcing California Senate Bill ("S.B.") 261, codified at Cal. Health & Safety Code § 38533, against Plaintiff pending the Court's ruling on Plaintiff's previously filed motion for preliminary injunction, or, in the alternative, advancing the hearing on ExxonMobil's preliminary injunction motion to such a date that will allow the Court to resolve the motion before S.B. 261's January 1, 2026 compliance deadline. Absent relief, S.B. 261 will unlawfully force Plaintiff to publish a report by January 1, 2026, seven days before Plaintiff's motion for preliminary injunction is currently set to be heard.

    This motion is brought on the grounds that: as applied to Plaintiff, S.B. 261 violates the First Amendment of the United States Constitution and is preempted under the Supremacy Clause of the United States Constitution, U.S. Const. art. VI, and the National Securities Markets Improvement Act of 1996; Plaintiff will suffer irreparable harm absent a temporary restraining order; and the balance of equities and public interest weigh in favor of granting a temporary restraining order.

    The motion is based upon this notice of motion; the memorandum of points and authorities in support thereof; Plaintiff's motion for preliminary injunction and the memorandum of points and authorities and other documents in support thereof (Dkt. 10); the declarations of Loan K. Tran (Dkt. 10-17) and Daniel Helgesen (Dkt. 10-20) filed in support of Plaintiff's motion for preliminary injunction, which are also filed concurrently herewith and which demonstrate the existence of an irreparable injury should the enforcement of S.B. 261 against ExxonMobil not be enjoined before January 1, 2026; the declaration of Jonathan Schneller filed concurrently herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters of which the

1  Court may take judicial notice.

2      As detailed in the concurrently filed Declaration of Jonathan Schneller, on October

3  31, 2025, and November 3, 2025, counsel for Plaintiff met and conferred via

4  videoconference with counsel for Defendants on Plaintiff's intent to seek a temporary

5  restraining order, the anticipated date and time of the hearing to be requested, and the

6  nature of the relief to be requested.  On November 4, 2025, Defendants' counsel informed

7  Plaintiff's counsel that Defendants would not agree to refrain from enforcing S.B. 261

8  against Plaintiff pending a ruling on Plaintiff's motion for preliminary injunction,

9  necessitating the filing of the instant motion.  The parties have agreed to the following

10  briefing schedule: (i) Defendants to file their opposition to the instant motion by November

11  14, 2025; and (ii) Plaintiff to file its reply in support of the instant motion by November 18,

12  2025.

13

14

15

16  Dated:  November 4, 2025                    Respectfully submitted,

17

18                              /s/ Jonathan Schneller_____
                               DAWN SESTITO (S.B. #214011)
19                              JONATHAN SCHNELLER (S.B. # 291288)
                               LAUREN KAPLAN (S.B. #294703)
                               400 South Hope Street, 19th Floor
20                              Los Angeles, CA 90071-2899
                               Telephone: (213) 430-6000
21                              Facsimile: (213) 430-6407
                               dsestito@omm.com
22                              jschneller@omm.com
                               lkaplan@omm.com
23
                               Counsel for Plaintiff Exxon Mobil
24                              Corporation

25

26

27

28

1

**INTRODUCTION**[1]

2        In recent years, federal courts have been forced, time and again, to step in to enjoin

3 enforcement of unconstitutional laws passed by the State of California (the "State") that

4 seek to force private parties to frame speech about matters of public concern in the State's

5 preferred terms, in violation of the First Amendment. *See, e.g.*, *See X Corp. v. Bonta*, 116

6 F.4th 888 (9th Cir. 2024) (reversing denial of preliminary injunction pending First

7 Amendment challenge to mandatory reporting of internet companies' content-moderation

8 policies); *NetChoice, LLC v. Bonta*, 113 F.4th 1101 (9th Cir. 2024) (affirming grant of

9 preliminary injunction pending First Amendment challenge to mandatory reporting of

10 internet platforms' risks to minors); *Cal. Chamber of Com. v. Council for Educ. & Rsch. on*

11 *Toxics*, 29 F.4th 468 (9th Cir. 2022) (affirming entry of preliminary injunction regarding

12 mandatory warning of carcinogenicity for acrylamide); *cf. Nat'l Ass'n of Wheat Growers v.*

13 *Bonta*, 85 F.4th 1263 (9th Cir. 2023) (affirming entry of permanent injunction regarding

14 mandatory warning of carcinogenicity for glyphosate following entry of preliminary

15 injunction). Recognizing that the "loss of First Amendment freedoms, for even minimal

16 periods of time, unquestionably constitutes irreparable injury," *Cal. Chamber of Com.*, 29

17 F.4th at 477 (quotations omitted), these courts have paused enforcement to preserve the

18 status quo and permit the plaintiffs' challenges to be decided on their merits.

19        Senate Bill ("S.B.") 261 is the latest unconstitutional California speech mandate—

20 particularly as applied to Plaintiff Exxon Mobil Corporation ("ExxonMobil")—that warrants

21 interim relief to avoid an irreparable First Amendment injury while the Court adjudicates

22 ExxonMobil's constitutional challenge. Absent relief, on January 1, 2026, S.B. 261 will

23 compel ExxonMobil to publish a "climate-related financial risk" report speculating and

24 opining about matters of immense public concern under a value-laden State-mandated

25 _____

26 [1] ExxonMobil incorporates by reference its memorandum of points and authorities in support of its motion for preliminary injunction (Dkt. 10), which is cited herein as "PI Motion." References to "Schneller PI Decl." are to

27 the Declaration of Jonathan Schneller submitted with the PI Motion (Dkt. 10-1). References to "Tran Decl." and "Helgesen Decl." are to the Declarations of Loan K. Tran and Daniel Helgesen submitted herewith, which

28 are copies of the declarations submitted with the PI Motion (Dkt. 10-17, 10-20). References to "Schneller TRO Decl." are to the Declaration of Jonathan Schneller submitted herewith.

reporting framework.  That outcome would violate both ExxonMobil's First Amendment rights and the National Securities Markets Improvement Act ("NSMIA"), which bars California from forcing public companies like ExxonMobil to publish burdensome investor disclosures exceeding federal requirements.

ExxonMobil's motion for a preliminary injunction is currently set to be heard January 8, 2026—the Court's earliest available motions hearing date—by which time ExxonMobil will have forever lost its right not to speak.  As such, ExxonMobil now moves for a temporary restraining order to bar the California Air Resources Board ("CARB") and the California Attorney General from enforcing S.B. 261 against ExxonMobil pending adjudication of ExxonMobil's preliminary injunction motion.  In the alternative, ExxonMobil respectfully requests that the hearing on its preliminary injunction motion be advanced to such a date that will allow the Court to resolve the motion before S.B. 261's January 1, 2026 compliance deadline.

**BACKGROUND[2]**

### A.    California Passes S.B. 261 as Part of the "Climate Accountability Package."

Starting January 1, 2026, S.B. 261 requires companies that do business in California and have annual revenues over $500 million to biennially publish a "climate-related financial risk report" "in accordance with the recommended . . . disclosures" issued by the nongovernmental Task Force on Climate-Related Financial Disclosures ("TCFD").  Cal. Health & Safety Code § 38533(b)(1)(A)(i), (c)(1).  S.B. 261 requires covered entities to report worldwide climate-related financial risks, not just risks tied to a reporting entity's California operations.  *See id.*  Although the statute references the possibility of compliance through an "equivalent reporting requirement," *id.* § 38533(b)(1)(A)(i), the only equivalents it recognizes are other mandatory or voluntary reporting frameworks "consistent with" the statute's TCFD mandate, *id.* § 38533(b)(3)(A), (B), such as the "International Financial Reporting Standards Sustainability Disclosure Standards" ("ISSB"), *id.*, which "fully

---

[2] A more thorough account of the relevant background appears in the PI Motion.  *See* PI Motion at 9-16.

1   incorporate[]" the TCFD Report's recommendations.[3]  And to the extent a covered entity

2   does not fully comply with the TCFD Report's recommended disclosures, S.B. 261 compels

3   it to "provide a detailed explanation for any reporting gaps" and "describe steps [it] will take

4   to prepare complete disclosures."  *Id.* § 38533(b)(1)(B).

5          The TCFD Report establishes a framework of "voluntary, consistent climate-related

6   financial disclosures" for use across sectors and jurisdictions.[4]  Consistent with its status

7   as a voluntary framework, the TCFD Report details eleven "recommended disclosures" in

8   four thematic areas—"Governance," "Strategy," "Risk Management," and "Metrics and

9   Targets."[5]  The TCFD Report also sets forth guidance relating to each of the eleven

10  recommended disclosures, including granular disclosures that the report calls for

11  organizations to "consider."[6]  The TCFD Report's recommendations are "complicated and

12  subjective."  Tran Decl. ¶ 9.  For example, the Report recommends that organizations

13  "[d]escribe the targets used by the organization to manage climate-related risks"—which

14  can be perceived as binding commitments—and their "performance against [such]

15  targets."[7]  And it calls for companies to "[d]escribe the resilience of [their] strategy, taking

16  into consideration different climate-related scenarios, including a 2°C or lower scenario."[8]

17         S.B. 261 was (along with S.B. 253)[9] one of two simultaneously enacted statutes that

18  California legislators dubbed the "Climate Accountability Package."[10]  As that moniker

---

[3] *See* Schneller PI Decl. Ex. K at 1 (INT'L FINANCIAL REPORTING STANDARDS, *ISSB and TCFD*, *available at* https://www.ifrs.org/sustainability/tcfd/). ("Companies applying IFRS S1 General Requirements for Disclosure of Sustainability-related Financial Information and IFRS S2 Climate-related Disclosures will meet the TCFD recommendations as the recommendations are fully incorporated into the ISSB Standards.").

[4] Schneller PI Decl. Ex. I (TCFD, FINAL REPORT: RECOMMENDATIONS OF THE TASK FORCE ON CLIMATE-RELATED FINANCIAL DISCLOSURES 4 (2017)) [hereinafter "TCFD Report"])

[5] *Id.* at 22.

[6] *E.g.*, *id.* at 28.

[7] *Id.* at 22.

[8] *Id.*

[9] ExxonMobil's complaint challenges both S.B. 253 and S.B. 261.  Although CARB was statutorily required to issue implementing regulations for S.B. 253 by July 1, 2025, CARB has yet to do so and has not yet set a deadline for S.B. 253 reporting obligations.  While the present motion seeks a temporary restraining order only against the January 1, 2026 reporting deadline imposed by S.B. 261, ExxonMobil reserves the right to seek preliminary injunctive relief as to S.B. 253 at any time.

[10] Schneller PI Decl. Ex. D at 1 (Press Release, Office of Scott Wiener, Senator Wiener's First-In-The-Nation Climate Corporate Carbon Disclosure Bill Heads to the Governor (Sept. 12, 2023), *available at*

EXXONMOBIL'S MOT. FOR TEMPORARY
RESTRAINING ORDER                          - 6 -                    CASE NO. 2:25-CV-03104-DJC-JDP

1  suggests and the statutes' legislative history confirms, California's aim is to force large

2  companies to produce reports that implicitly assume responsibility for climate change

3  notwithstanding their carbon efficiency relative to the alternatives that would step in to

4  meet demand in their absence.  Although ostensibly an investor-protection statute, one of

5  S.B. 261's stated purposes was to create a "more complete picture of how [reporting

6  companies'] future operations may affect . . . global climate change," Schneller PI Decl. Ex.

7  B (Senate Committee on Environmental Quality, S.B. 261 (Stern), at 5 (Mar. 15, 2023))—as

8  S.B. 261's sponsor put it, to "hold[] companies accountable for managing climate risk."

9  Schneller PI Decl. Ex. C (Senate Judiciary Committee, S.B. 261 (Stern), at 8 (Apr. 18, 2023)).

10  S.B. 261's author hoped that forcing companies to trumpet this framing would affect

11  "decision making on where to invest private and public dollars."  *Id.* at 5.

12       **B.**    **S.B. 261's Impacts on ExxonMobil.**

13       ExxonMobil is a global company, and the vast majority of its business operations

14  occur outside of California.  Tran Decl. ¶ 4; *see* PI Motion at 14-15.  It has no refining

15  operations in the State and does not currently explore for, produce, manufacture, or

16  transport crude oil or natural gas in California.  Tran Decl. ¶ 4.  The Environmental

17  Protection Agency's Greenhouse Gas Reporting Program ("GHGRP") requires ExxonMobil to

18  report greenhouse gas emissions for all of its major U.S. facilities—in 2023, the most recent

19  reporting year with publicly available data, none of the 68 U.S. facilities for which

20  ExxonMobil was required to report under the GHGRP was in California.[11]  Notwithstanding

21  these limited California ties, ExxonMobil is subject to S.B. 261's reporting requirement.  *See*

22  PI Motion at 15.

23       As federal securities laws require, ExxonMobil has long disclosed its material

24  climate-related business risks in Securities and Exchange Commission ("SEC") filings.  Tran

25  https://sd11.senate.ca.gov/news/senator-wieners-first-nation-climate-corporate-carbon-disclosure-bill-heads-governor).

26  [11] 40 C.F.R. § 98.2 (requiring reporting for facilities that emit 25,000 metric tons or more of greenhouse gases
27  per year; certain suppliers of fossil fuels, industrial greenhouse gases, and products containing greenhouse
gases; and facilities that inject $CO_2$ underground); Schneller PI Decl. ¶ 18 (REPORTED PARENT COMPANIES,
28  Greenhouse Gas Reporting Program, Environmental Protection Agency, *available at*
https://www.epa.gov/system/files/other-files/2024-10/ghgp_data_parent_company.xlsb).

1    Decl. ¶¶ 5-6, 10.  But S.B. 261 would require more.  While ExxonMobil's SEC filings

2    contextualize climate-related financial risks alongside the company's broader business

3    risks and strategies, S.B. 261 will compel it to report on climate-related financial risks in

4    isolation, severing them from their broader business context and magnifying their business

5    significance as compared to other financial risks.  *Id.* ¶ 8.  And, by requiring reporting "in

6    accordance with" the TCFD Report's "recommended . . . disclosures," Cal. Health & Safety

7    Code § 38533(b)(1)(A)(i), it will dictate the terms in which ExxonMobil describes those risks.

8    For example, ExxonMobil will be forced to "[d]escribe the climate-related risks and

9    opportunities the organization has identified over the short, medium, and long term,"[12]

10    although the company does not presently define in its SEC filings what it considers to be the

11    relevant short, medium, and long-term timeframes.  Tran Decl. ¶ 12.  Likewise, it will have

12    to "[d]escribe the targets used by the organization to manage climate-related risks and

13    opportunities,"[13] which could be perceived as binding commitments that ExxonMobil does

14    not presently make—or to justify why it does not set such targets.  *Id.*

15         The voluntary phrasing of the TCFD Report framework and the subjective judgments

16    required to navigate its recommended disclosures offer little clarity on what, precisely, S.B.

17    261 requires covered entities to say.  At the same time, CARB has offered covered entities

18    little in the way of formal or informal guidance about what they must do to comply with S.B.

19    261 by the statutory January 1, 2026 reporting deadline.  After more than 18 months of

20    inaction following the statute's enactment, the agency held a May 29, 2025 virtual "Kickoff

21    Workshop," in which it raised such preliminary "Discussion Questions" such as, "How

22    should SB 261 be implemented by CARB?  Regulation?  Guidance?," but offered no

23    answers.[14]  On July 9, CARB published a list of "Frequently Asked Questions" on its

24    implementation of S.B. 261.  Although one such frequently asked question was "[h]ow

25    _____

26    [12] TCFD Report at 22.
      [13] *Id.*

27    [14] Schneller TRO Decl. Ex. C (CARB, Kickoff Workshop: California Corporate Greenhouse Gas Reporting and
      Climate Related Financial Risk Disclosure Programs at 33 (May 29, 2025), *available at*

28    https://ww2.arb.ca.gov/sites/default/files/2025-05/SB%20253%20261%20Workshop%20slides%205-
      29.pdf).

1    . . . an organization [should] determine what needs to be included in [its] climate-related

2    financial risk report," CARB simply repeated S.B. 261's statutory language and stated that

3    the statute "specifies some flexibility in choosing a reporting framework, and entities then

4    apply the principles embedded in that chosen framework."[15]  Nowhere did CARB

5    acknowledge that the statute's "flexibility" on the choice of framework is apparently

6    illusory, *see supra* at 5-6, or provide any meaningful explanation of how companies should

7    assess their compliance with the TCFD Report's eleven subjective and voluntarily worded

8    "recommended disclosures."

9         At a second virtual public workshop held August 21, 2025, CARB acknowledged that

10    companies still needed clarity on what the agency would require them to report under S.B.

11    261, and indicated that it would "provide guidance on minimum requirements for

12    compliance" with S.B. 261.[16]  But while CARB published a "Draft Checklist" on September 2

13    listing such "minimum CARB requirement[s]," the checklist indicated that the "statute . . .

14    will control" in the event of any discrepancy between the statute and checklist, and that the

15    checklist is "subject to change without notice."[17]

16         Confronted with CARB's lack of guidance, on September 5, 2025, ExxonMobil wrote

17    to CARB Division Chief Dr. Sydney Vergis—the official identified at CARB's workshops as

18    leading the agency's implementation of S.B. 261—outlining its disagreements with certain

19    aspects of the TCFD Report and proposing that ExxonMobil report climate-related risks

20    under S.B. 261 in a manner substantially similar to its current disclosures, including in SEC

21    filings.  Helgesen Decl. ¶ 3.  ExxonMobil requested a response from the agency by

22    September 30, 2025.  Helgesen Decl. Ex. A (September 5, 2025 Letter) at 3.  To date, CARB

23

---

24    [15] Schneller TRO Decl. Ex. E (CARB, California Corporate Greenhouse Gas Reporting and Climate-Related Financial Risk Disclosure Programs: Frequently Asked Questions Related to Regulatory Development and Initial Reports at 6-7 (July 9, 2025), *available at* https://ww2.arb.ca.gov/sites/default/files/2025-07/FAQs%20Regarding%20California%20Climate%20Disclosure%20Requirements.pdf).

25

26    [16] Schneller TRO Decl. Ex. D (CARB, SB 253/261/219 Public Workshop: Regulation Development and Additional Guidance at 27 (Aug. 21, 2025), *available at* https://ww2.arb.ca.gov/sites/default/files/2025-08/SB%20253%20261%20workshop%20slides%208-21.pdf).

27    [17]  Schneller PI Decl. Ex. E at 3 (CARB, Climate Related Financial Risk Disclosure Draft Checklist (Sept. 2, 2025), available at https://ww2.arb.ca.gov/sites/default/files/2025-09/Climate%20Related%20Financial%20Risk%20Report%20Checklist.pdf [hereinafter "Draft Checklist"]).

28

1    has not responded to ExxonMobil's letter.  Helgesen Decl. ¶ 4.

2        **C.    The *Chamber of Commerce* Case**

3        Shortly after the enactment of S.B. 253 and S.B. 261, several plaintiffs, including the

4    Chamber of Commerce of the United States of America (the "Chamber"), filed suit

5    asserting facial First Amendment challenges to the statutes.  *Chamber of Com. of the U.S.*

6    *v. Cal. Air Res. Bd.*, 2025 WL 2337209, at *1-3 (C.D. Cal. Aug. 13, 2025).  Those challenges

7    required the *Chamber* court to determine whether the laws' "unconstitutional applications

8    substantially outweigh [their] constitutional ones," regardless of their constitutionality as

9    applied to any particular plaintiff.  *X Corp.*, 116 F.4th at 898 (quotations omitted).  On

10    August 13, 2025, the *Chamber* court denied the plaintiffs' motion for a preliminary

11    injunction as to both laws.  *Id.* at *21.[18]  Although the court rejected the contention that the

12    S.B. 261's speech mandate is justified by California's interests in fraud prevention or

13    emissions reduction, it upheld the law in light of California's proffered investor-protection

14    interest, citing a declaration from State-controlled pension fund that the law would help

15    investors "better understand the financial implications of their investments." *Id.* at *20-21.

16        The *Chamber* plaintiffs appealed the district court's denial of a preliminary

17    injunction and have requested that the Ninth Circuit issue an injunction pending its appeal

18    by November 10, 2025.  *See* Emergency Mot. for Assignment of Merits Panel at 4, *Chamber*

19    *of Com. of the U.S. v. Randolph*, No. 25-5327 (9th Cir. Oct. 27, 2025).  The Ninth Circuit has

20    not yet ruled on the motion for an injunction, and oral argument on the merits is currently

21    scheduled for January 9, 2026.

22        **D.    ExxonMobil Files Suit and Moves for a Preliminary Injunction.**

23        Having received no response to its attempt to consensually resolve its compliance

24    obligations and scant guidance from CARB, ExxonMobil filed this lawsuit challenging S.B.

25    253 and S.B. 261 on October 24, 2025.  It filed its motion for preliminary injunction on

26    October 29, 2025, and served it on October 29 and 31, 2025—the latter being the earliest

27

28    ---
     [18] The *Chamber* court's ruling rested on a number of legal errors, as explained in ExxonMobil's PI Motion.  *See* PI Motion at 21-22, 26.

1   date on which CARB was available to take service—more than two months before S.B.

2   261's January 1, 2026 compliance deadline.   ExxonMobil noticed its motion for hearing on

3   January 8, 2026—the Court's earliest available hearing date, seven days after the initial

4   reporting deadline.  Although ExxonMobil asked Defendants to voluntarily stay

5   ExxonMobil's January 1 deadline pending the Court's adjudication of ExxonMobil's motion

6   for preliminary injunction in the hopes of avoiding the need for the Court's intervention,

7   Defendants have refused.

8                                **LEGAL STANDARD**

9       "The purpose of a temporary restraining order is to preserve the status quo" until a

10  hearing can be held on a motion for a preliminary injunction.  *Pok v. ZBS Law, LLP*, 2025 WL

11  1455324, at *2 (E.D. Cal. May 21, 2025).  "In determining whether to issue a temporary

12  restraining order, courts apply the factors that guide the evaluation of a request for

13  preliminary injunctive relief, which are: (1) a likelihood of success on the merits;

14  (2) irreparable harm in the absence of preliminary relief; (3) the balance of equities; and (4)

15  the public interest." *Id.*  Likelihood of success on the merits is the "most important among

16  these factors," "especially . . . for constitutional claims, as the remaining . . . factors

17  typically favor enjoining laws thought to be unconstitutional." *Junior Sports Mags. Inc. v.*

18  *Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).  In First Amendment cases, likelihood of success

19  requires the moving party to make only a "colorable claim that its First Amendment rights

20  have been infringed, or are threatened with infringement, at which point the burden shifts to

21  the government to justify the restriction on speech." *Meinecke v. City of Seattle*, 99 F.4th

22  514, 521 (9th Cir. 2024) (quotations omitted).

23      Establishing irreparable harm "is relatively easy . . . in a First Amendment case,"

24  requiring the movant only to "demonstrate the existence of a colorable First Amendment

25  claim." *Cal. Chamber of Com.*, 29 F.4th at 482 (quotations omitted).  Further, where, as

26  here, "the party opposing injunctive relief is a government entity . . . , the third and fourth

27  factors merge." *X Corp.*, 116 F.4th at 897 (cleaned up).

28

1

**ARGUMENT**

2

**I.    ExxonMobil Is Likely To Prevail On The Merits Of Its First Amendment Challenge
3         to S.B. 261.**

4         ExxonMobil's preliminary injunction motion details why it is likely to succeed on the

5    merits of its First Amendment claim.  *See* PI Motion at 17-28.  Just like the many California

6    speech mandates federal courts have not hesitated to enjoin, S.B. 261 violates the

7    compelled speech doctrine by forcing ExxonMobil to speak about matters of public concern

8    under a value-laden framework designed to further the State's preferred messages.

9         S.B. 261 is subject to strict scrutiny.  By "[m]andating speech" that ExxonMobil

10   "would not otherwise make" and forcing ExxonMobil to speak particular messages, S.B.

11   261 "necessarily alters the content of [ExxonMobil's] speech."  *Riley v. Nat'l Fed'n of the*

12   *Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).  The speech it mandates relates to a

13   "controversial" and "sensitive political topic"—"climate change"—that occupies "the

14   highest rung of the hierarchy of First Amendment values and merits special protection."

15   *Janus v. Am. Fed'n of State Emps., Council 31*, 585 U.S. 878, 913-14 (2018).  And

16   ExxonMobil objects to the report that S.B. 261 would require it to publish, including

17   because it would:

18        • Require ExxonMobil to dedicate a standalone report to climate-related financial

19              risks, not only forcing ExxonMobil to "implicitly opin[e]" that climate risks are

20              different in kind or degree from other business risks,  *X Corp.*, 116 F.4th at 901,

21              but also severing them from their broader business context in a manner

22              affirmatively unhelpful for investors;

23        • Force ExxonMobil to "creat[e] and disclos[e] . . . highly subjective opinions"

24              about numerous speculative topics, *NetChoice*, 113 F.4th at 1122, such as the

25              "climate-related risks and opportunities the organization has identified over the

26              short, medium, and long term," *see supra* at 8; and

27        • Compel ExxonMobil to set climate-related targets, which could be perceived as

28              binding commitments, or explain to the public why it does not set them, *see*

1    *supra* at 8.

2          This mandatory alteration of ExxonMobil's speech is not commercial speech subject

3    to intermediate scrutiny because it does not "propose a commercial transaction."

4    *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020).  Rather, it requires

5    ExxonMobil to speculate and opine about climate-related risks to every part of its business,

6    anywhere in the world, regardless of their nexus to any specific commercial transaction.

7    *See, e.g.*, *X Corp.*, 116 F.4th at 898, 901-03 (mandatory reports of social media companies'

8    definitions of content categories not commercial speech).  The so-called *Bolger* factors

9    confirm that the speech is noncommercial: The reports that S.B. 261 mandates are not

10   advertisements, do not relate to any specific product or service, and are motivated solely

11   by statutory command, not economic gain.  *See NetChoice*, 113 F.4th at 1120 (state-

12   mandated reports identifying risks to children of online services do not satisfy *Bolger*

13   factors).  Further, even assuming such sweeping prognostication were commercial, it

14   would be "inextricably intertwined" with ExxonMobil's noncommercial speech on a matter

15   of public concern, and so subject to strict scrutiny.  *Riley*, 487 U.S. at 782; *see* Tran Decl.

16   ¶¶ 6, 8, 10-13, 17 (describing ExxonMobil's climate-policy advocacy).

17         Because the speech S.B. 261 mandates is not commercial, it cannot be subject to

18   the relaxed scrutiny of *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626 (1985),

19   which applies only to the mandatory disclosure of "purely factual and uncontroversial

20   information" in commercial speech.  *See X Corp.*, 116 F.4th at 900.  There is of course

21   nothing "factual and uncontroversial" about forcing ExxonMobil to speculate about

22   hypothetical future events and opine about a range of topics in a report designed to place

23   unique emphasis on the business risks posed by climate change, which is "anything but an

24   'uncontroversial' topic."  *Nat'l Inst. of Family & Life Advocs. v. Becerra* (*NIFLA*), 585 U.S.

25   755, 769 (2018).  Nor does the mandated speech say anything "about the terms under

26   which [ExxonMobil's] services will be available."  *Zauderer*, 471 U.S. at 651; *see CTIA – The*

27   *Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 845 (9th Cir. 2019).

28         But whatever level of scrutiny applies, S.B. 261 fails constitutional muster as applied

1    to ExxonMobil.

2           The State argued in the *Chamber* case that S.B. 261 will benefit investors by

3    combatting fraud and allowing investors to "make informed judgments about the impact of

4    climate-related risks on their economic choices."  Schneller PI Decl. Ex. G (Defs.' Opp. to

5    Pls.' Mot. for Prelim. Inj., *U.S. Chamber of Com., et al. v. Randolph, et al.*, No. 2:24-cv-

6    00801 (C.D. Cal. Apr. 7, 2025)), at 16-18.  As applied to ExxonMobil, however, that is no

7    valid state interest at all: the federal securities laws already comprehensively regulate the

8    investor disclosures of publicly traded companies (like ExxonMobil).  Moreover, the NSMIA

9    preempts California from grafting the TCFD Report's recommendations onto those federal

10   obligations. *See infra* Part II.  No less important, there is zero evidence that ExxonMobil's

11   existing climate-risk disclosures fail to adequately inform investors, much less that S.B.

12   261's sweeping speech mandates are reasonably tailored to address any (unidentified)

13   shortcoming. *See* PI Motion at 24-26.  And putting aside that ExxonMobil has never

14   defrauded investors about its climate-related business risks, S.B. 261's speech mandate

15   could not be more poorly tailored to address the State's putative fraud-prevention

16   concerns given the ample anti-fraud remedies available to both the State and private

17   investors under existing law. *See, e.g.*, Cal. Corp. Code § 25401; *see also* PI Motion at 26-

18   27.

19          The State has alternatively suggested that S.B. 261 serves to "encourage companies

20   doing business in California to reduce their emissions and thereby mitigate" risks

21   associated with climate change.  Schneller PI Decl. Ex. G (Defs.' Opp. to Pls.' Mot. for

22   Prelim. Inj., *U.S. Chamber of Com., et al. v. Randolph, et al.*, No. 2:24-cv-00801 (C.D. Cal.

23   Apr. 7, 2025)), at 16-18.  As the *Chamber* court held, there is no evidence whatsoever that

24   the reports S.B. 261 requires would directly advance the State's interest in emissions

25   reduction. *Chamber*, 2025 WL 2337209, at *19-21; *see Cent. Hudson Gas & Elec. Corp. v.*

26   *Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 564 (1980).  But even if there were, that interest

27   could not justify forcing *ExxonMobil* to speak: ExxonMobil's business activities in California

28   generate negligible greenhouse gas emissions, and California lacks any valid interest in

1    burdening its First Amendment rights to reduce out-of-state emissions beyond California's

2    regulatory authority. *See Bigelow v. Virginia*, 421 U.S. 809, 827-28 (1975); PI Motion at 27-

3    28.

4          In sum, just like the California reporting mandates enjoined in *X Corp.* and

5    *NetChoice*, forcing ExxonMobil to speak under a framework it disagrees with would be

6    "unjustified [and] unduly burdensome" in light of the State's asserted harms, *NIFLA*, 585

7    U.S. at 776, and would not directly advance a valid governmental interest—much less be

8    narrowly tailored to advance a compelling interest. ExxonMobil is therefore likely to

9    succeed on the merits of its First Amendment challenge to S.B. 261.

10
11   **II.    ExxonMobil Is Likely To Prevail On Its Claim That The NSMIA Preempts S.B. 261 As-Applied to ExxonMobil.**

12         ExxonMobil's preliminary injunction motion likewise explains that the NMSIA

13   preempts state laws augmenting federal investor-disclosure requirements for publicly held

14   companies, and thus preempts S.B. 261 as applied to ExxonMobil. *See* PI Motion at 28-31.

15         "The NSMIA 'seeks to further advance the development of national securities

16   markets and eliminate the costs and burdens of duplicative and unnecessary regulation by,

17   as a general rule, designating the Federal government as the exclusive regulator of national

18   offering of securities.'" *Zuri-Inv. AG v. Natwest Fin. Inc.*, 177 F. Supp. 2d 189, 192 (S.D.N.Y.

19   2001) (quoting Report of Committee on Commerce, H.R. Rep. 104–622, 104th Cong., 2d

20   Sess., at 16 (1996)). To that end, the statute "prevents states from imposing, limiting or

21   imposing any condition on the use of any offering *or disclosure document* relating to a

22   covered security." *Id.* at 193 (emphasis added). The provision states:

23
24         Except as otherwise provided in this section, no law of any State . . . shall directly or indirectly prohibit, limit, or impose any conditions upon the use of
25         . . . any proxy statement, report to shareholders, or other disclosure document relating to a covered security or the issuer thereof that is required
26         to be and is filed with the [Securities and Exchange] Commission or any national securities organization[.]

27

28

1  15 U.S.C. § 77r(a)(2)(B).  For "covered securities" such as ExxonMobil's securities,[19] the

2  statute preempts not just state regulation of "offering document[s]," *id.* § 77r(a)(2)(A), but

3  also interference with "the use of" post-registration disclosure documents such as "proxy

4  statement[s], report[s] to shareholders, and other disclosure documents," *id.* § 77r(a)(2)(B).

5       That is precisely what S.B. 261 attempts.  As a public company, ExxonMobil

6  undertakes substantial investor disclosures to satisfy its federal securities obligations.

7  *See, e.g.*, 17 C.F.R. §§ 229.105, 240.14a-3(b)(1)-(11), 240.14c-3.  By requiring ExxonMobil to

8  make additional investor-protection disclosures— as a condition of doing business in

9  California—above and beyond what federal law requires, S.B. 261 would impermissibly

10  "limit, or impose . . . conditions upon the use of" the federally mandated disclosures that

11  ExxonMobil must file with the SEC, squarely contravening the NSMIA's express preemption

12  provision.  15 U.S.C. § 77r(a)(2)(B); *see* PI Motion at 28-31.  ExxonMobil is therefore likely to

13  prevail on the merits of its argument that S.B. 261 contravenes the NSMIA as-applied to

14  ExxonMobil.

15  **III.   The Remaining Temporary Restraining Order Factors All Support a Temporary**
16  **Restraining Order.**

17       The remaining temporary restraining order factors all support granting ExxonMobil's

18  requested relief.  Because ExxonMobil has "demonstrate[d] the existence of a colorable . . .

19  claim" under the First Amendment, it has adequately shown irreparable harm.  *See Cal.*

20  *Chamber of Com.*, 29 F.4th at 482.  In particular, S.B. 261 will force ExxonMobil to publish a

21  report under the TCFD framework by January 1, 2026—less than two months from now.

22  That infringement of its "First Amendment freedoms . . . unquestionably constitutes

23  irreparable injury."  *Cal. Chamber of Com.*, 29 F.4th at 477.  Absent an injunction,

24  ExxonMobil will likewise immediately forfeit the NSMIA's protection against S.B. 261's

25  augmentation of existing federal investor-disclosure requirements, thereby incurring the

26  very compliance burdens and inconsistent disclosure obligations that the NSMIA's

---

[19] The NSMIA defines covered securities to include securities listed on national exchanges (like ExxonMobil's common stock) and more senior securities of the same issuer (like ExxonMobil's bonds).  15 U.S.C. § 77r(b)(1).

1   preemption provision was enacted to avoid.  Indeed, ExxonMobil is already incurring harms

2   in the form of compliance burdens, as it needs to divert resources to prepare the requisite

3   reports by January 1.  Tran Decl. ¶¶ 15-16.

4         The balance of hardships and public interest likewise favor a temporary restraining

5   order.  Because the State is the opposing party, the third and fourth factors—the "balance

6   of equities" and "public interest"—merge.  *X Corp.*, 116 F.4th at 897.  And "[i]t is always in

7   the public interest to prevent the violation of a party's constitutional rights."  *Id.* at 904.  The

8   "serious First Amendment questions" arising from S.B. 261's application to ExxonMobil are

9   "alone" enough to "compel[] a finding that the balance of hardships tips sharply in

10  [ExxonMobil's] favor."  *Id.*  Likewise, it is not "equitable or in the public's interest to allow

11  the state . . . to violate the requirements of federal law" by enforcing a preempted state-law

12  requirement.  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013); *see also Am.*

13  *Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009) (balance

14  of hardships and public interest favored preliminary injunction against likely-preempted

15  local ordinance).  ExxonMobil has faced, and will face, substantial compliance burdens if

16  forced to comply with unnecessary state-law investor disclosure requirements on top of its

17  federal reporting obligations—particularly given its belief that the report S.B. 261 requires

18  will be affirmatively unhelpful to investors.  *See* Tran Decl. ¶¶ 8, 14-17.  And there is no

19  significant public interest in compelling ExxonMobil to publish the required report on

20  January 1—as opposed to after adjudication of ExxonMobil's preliminary injunction

21  motion—given that California has never previously required such a report and has yet to so

22  much as propose regulations under S.B. 261, much less establish any regulatory regime

23  whose orderly operation depends on reporting by January 1, 2026.

24  **IV.    ExxonMobil's Request for Injunctive Relief Is Timely.**

25        ExxonMobil has timely brought this motion under Local Rule 231(b).  As detailed

26  above, CARB delayed until September 2, 2025 to provide any concrete guidance on how it

27  expects covered entities to implement the TCFD Report's recommendations, and even then

28  provided only equivocal instructions that it insisted was subject to change at any time.  *See*

*supra* at 8-9.  While CARB delayed, ExxonMobil endeavored to consensually resolve its constitutional objections to S.B. 261, but its correspondence went unanswered.  *See supra* at 9-10.  Less than a month after the date by which it requested a response from CARB, ExxonMobil filed suit, and shortly thereafter filed and served its motion for preliminary injunction.  That timing provided more than two months for adjudication of ExxonMobil's motion before S.B. 261's January 1, 2026 compliance deadline and, under the Court's Local Rules, permitted ExxonMobil to notice its motion for hearing in early December. *See* L.R. 230(b).  ExxonMobil's choice to await guidance and attempt to resolve its constitutional objections consensually with CARB was not only reasonable but salutary, and the unexpected lack of an available motions hearing date in December should not weigh against a temporary restraining order until its preliminary injunction motion can adjudicated.

## V.    In the Alternative, ExxonMobil Respectfully Requests that the Court Advance the Hearing Date on ExxonMobil's Motion for Preliminary Injunction.

In the alternative, to prevent an irreparable First Amendment injury, ExxonMobil respectfully requests that the hearing on its preliminary injunction motion be advanced to such a date that will allow the Court to resolve the motion before S.B. 261's January 1, 2026 compliance deadline.

### CONCLUSION

The Court should enter a temporary restraining order prohibiting Defendants from enforcing S.B. 261 against ExxonMobil pending the resolution of ExxonMobil's motion for preliminary injunction, or, in the alternative, rescheduling the hearing date for ExxonMobil's motion for preliminary injunction so that it may be heard before January 1, 2026.

1  Dated: November 4, 2025                    Respectfully submitted,

2

3                                             /s/ Jonathan Schneller
                                              DAWN SESTITO (S.B. #214011)
4                                             JONATHAN SCHNELLER (S.B. # 291288)
                                              LAUREN KAPLAN (S.B. #294703)
5                                             400 South Hope Street, 19th Floor
                                              Los Angeles, CA 90071-2899
6                                             Telephone: (213) 430-6000
                                              Facsimile: (213) 430-6407
7                                             dsestito@omm.com
                                              jschneller@omm.com
8                                             lkaplan@omm.com

9                                             Counsel for Plaintiff Exxon Mobil
                                              Corporation
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28