ROB BONTA
Attorney General of California
MYUNG J. PARK (SBN 210866)
LAURA J. ZUCKERMAN (SBN 161896)
Supervising Deputy Attorneys General
EMILY HAJARIZADEH (SBN 325246)
CAITLAN MCLOON (SBN 302798)
M. ELAINE MECKENSTOCK (SBN 268861)
DYLAN C. REDOR (SBN 338136)
ELIZABETH SONG (SBN 326616)
KATHERINE GAUMOND (SBN 349453)
Deputy Attorneys General
  455 Golden Gate Ave, Suite 11000
  San Francisco, CA 94102
  Telephone:  (415) 510-4439
  E-mail:  Katherine.gaumond@doj.ca.gov
*Attorneys for Defendants Lauren Sanchez, Steven S. Cliff, and Robert A. Bonta*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EXXON MOBIL CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**LAUREN SANCHEZ, in her official capacity as Chair of the California Air Resources Board, STEVEN S. CLIFF, in his official capacity as Executive Officer of the California Air Resources Board, and ROBERT A. BONTA, in his official capacity as Attorney General of California,**<br><br>Defendants. | 2:25-cv-03104-DJC-JDP<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 22, 2026<br>Time: 1:30 pm<br>Judge: Hon. Daniel J. Calabretta<br><br>Trial Date: None set<br>Action Filed: October 24, 2025 |

**TABLE OF CONTENTS**

**Page**

Notice of Motion and Motion ..............................................................................................1

Memorandum of Points and Authorities .............................................................................3

Introduction.........................................................................................................................3

Background...........................................................................................................................4

    I.     The California Legislature Enacts S.B. 253 and 261 ....................................4

    II.    Exxon Commences this Action....................................................................6

Legal Standard .....................................................................................................................7

Argument ..............................................................................................................................8

    I.     Plaintiff's Third Claim, Regarding NSMIA, Should Be Dismissed...............8

        A.    NSMIA Does Not Occupy the Field of Corporate Disclosures ................................................................................8

        B.    NSMIA Does Not Expressly Preempt State Corporate Disclosures ..............................................................................10

        C.    Exxon Identifies No Conflict Between S.B. 261 and Federal Law...............................................................................13

Conclusion .........................................................................................................................13

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.S. Goldmen & Co. v. New Jersey Bureau of Sec.*
   163 F.3d 780 (3d Cir. 1999)................................................................................8

*Aargon Agency, Inc. v. O'Laughlin*
   70 F.4th 1224 (9th Cir. 2023)...........................................................................8

*Baker, Watts & Co. v. Miles & Stockbridge*
   876 F.2d 1101 (4th Cir. 1989)..........................................................................9

*Chamber of Com. of U.S. v. California Air Res. Bd.*
   No. 2:24-CV-00801-ODW, 2025 WL 2337209 (C.D. Cal. Aug. 13,
   2025) ............................................................................................................5, 6

*Chamber of Commerce v. Cal. Air Res. Bd.*
   No. 2:24-cv-801-ODW (C.D. Cal.) ...................................................................7

*Chamber of Commerce v. Randolph*
   No. 25-5327 (9th Cir.) ......................................................................................7

*CSX Transp., Inc. v. Easterwood*
   507 U.S. 658 (1993)..........................................................................................8

*English v. Gen. Elec. Co.*
   496 U.S. 72 (1990)............................................................................................8

*In re Gilead Sci. Sec. Litig.*
   536 F.3d. 1049 (9th Cir. 2008).........................................................................7

*Keene Corp. v. United States*
   508 U.S. 200 (1993)........................................................................................13

*Kwan v. SanMedica Int'l*
   854 F.3d 1088 (9th Cir. 2017).........................................................................12

*Lander v. Hartford Life & Annuity Ins. Co.*
   251 F.3d 101 (2d Cir. 2001)..............................................................................9

*Marder v. Lopez*
   450 F.3d 445 (9th Cir. 2006)............................................................................6

*Metropolitan Life Ins. Co. v. Mass.*
   471 U.S. 724 (1985).........................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*Metropolitan Life Ins. Co. v. Taylor*
    481 U.S. 58 (1987) ....................................................................................................8

*North Star Int'l v. Az. Corp. Comm'n*
    720 F.2d 578 (9th Cir. 1983) ............................................................................. 9, 13

*Ray v. Atlantic Richfield Co.*
    435 U.S. 151 (1978) ................................................................................................13

*SEC v. Ralston Purina Co.*
    346 U.S. 119 (1953) ..................................................................................................9

*SIFMA v. Ashcroft*
    745 F. Supp. 3d 783 (W.D. Mo. 2024) .........................................................................13

*Watison v. Carter*
    668 F.3d 1108 (9th Cir. 2012) ...................................................................................8

*Wilson v. Craver*
    994 F.3d 1085 (9th Cir. 2021) ...................................................................................7

*Woods v. U.S. Bank N.A.*
    831 F.3d 1159 (9th Cir. 2016) ...................................................................................7

*Zuri-Invest Agzuri-Invest AG v. Natwest Fin. Inc.*
    177 F. Supp. 2d 189 (S.D.N.Y. 2001) .........................................................................8

**STATUTES**

15 U.S.C.
    § 77e ........................................................................................................................9
    § 77g ........................................................................................................................9
    § 77r ................................................................................................................... 3, 10
    § 77r(a) ............................................................................................................. 10, 13
    § 77r(a)(1) ..............................................................................................................11
    § 77r(a)(1)(A) ........................................................................................................11
    § 77r(a)(2)(A) ........................................................................................................11
    § 77r(a)(2)(B) .................................................................................................. 11, 12
    § 77r(b) ..................................................................................................................11
    § 77r(d)(1) .............................................................................................................10
    § 78o(i)(1) ..............................................................................................................12

Cal. Stat., Chapter 382
    § 1 ...........................................................................................................................4

iii

**TABLE OF AUTHORITIES**
(continued)

Page

Cal. Stat., Chapter 383
  § 1 ........................................................................................................... 4, 11

California Health & Safety Code
  § 38532(b)(2) ................................................................................................. 4
  § 38532(b)(3) ................................................................................................. 5
  § 38532(b)(4) ................................................................................................. 5
  § 38532(b)(5) ................................................................................................. 5
  § 38532(c)(1) .............................................................................................. 4, 5
  § 38532(c)(1)(D)(i) ......................................................................................... 5
  § 38532(c)(1)(F)(i) ......................................................................................... 5
  § 38532(c)(2)(A)(i)(I) ...................................................................................... 6
  § 38532(c)(2)(A)(i)(II) ..................................................................................... 6
  § 38532(d)(1) ................................................................................................. 5
  § 38532(e)(1) ................................................................................................. 5
  § 38533 .......................................................................................................... 7
  § 38533(a)(2) ................................................................................................. 5
  § 38533(a)(4)–(b)(1)(A) .................................................................................. 5
  § 38533(b)(1)(A) ............................................................................................ 6
  § 38533(b)(1)(A)(i) ......................................................................................... 5
  § 38533(c)(1) ................................................................................................. 6

Pub. L. No. 104-290, 110 Stat. 3416 (Oct. 11, 1996) ................................................ 10, 12

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution, Article VI
  Clause 2 .............................................................................................. 3, 7, 8, 13

**COURT RULES**

Federal Rule of Civil Procedure
  Rule 12(b)(6) ................................................................................................ 1, 7

**OTHER AUTHORITIES**

17 C.F.R.
  pt. 210 ........................................................................................................... 9
  pt. 229 ........................................................................................................... 9

## **NOTICE OF MOTION AND MOTION**

TO THE COURT, THE PARTIES, AND COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN THAT, on January 22, 2026, at 1:30 pm, or as soon thereafter as the matter may be heard, in Courtroom 7 of this Court, located in the United States Courthouse at 501 I Street, Sacramento, CA 95814, before the Honorable Daniel J. Calabretta, that Defendants Lauren Sanchez, in her official capacity as Chair of the California Air Resources Board, Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board, and Robert A. Bonta, in his official capacity as Attorney General of California, will and hereby do respectfully move to dismiss Count Three of Plaintiff's Complaint in its entirety.

This Motion to Dismiss is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Per this Court's standing order, the undersigned counsel for Defendants hereby certifies that the parties met and conferred on November 13, 2025, concerning the substance of this motion. Plaintiff disagreed that dismissal is warranted; accordingly, meet-and-confer efforts have been exhausted.

Defendants' Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice and attached papers, all documents in the Court's file, and other such written and oral argument as may be presented to the Court at the hearing on this matter.

Dated:  November 18, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
LAURA J. ZUCKERMAN
Supervising Deputy Attorneys General
CAITLAN MCLOON
Deputy Attorney General

*/s/ Katherine Gaumond*

KATHERINE GAUMOND
Deputy Attorney General
*Attorney for Defendants*

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Exxon Mobil Corporation (Exxon) challenges two California statutes, Senate Bills (S.B.) 253 and 261, that the Governor signed into law in October 2023. These laws increase transparency and improve access to information about the greenhouse gas (GHG) emissions and climate-related financial risks of the largest companies, both public and private, doing business in the State.  The laws complement other reporting requirements by ensuring that a range of stakeholders— investors, consumers, lenders, underwriters, and other market participants—can make decisions informed by a greater understanding of the GHG emissions associated with these companies, and the climate-related financial risks the companies face.

Exxon, a publicly traded company subject to certain reporting requirements of the United States Securities and Exchange Commission (SEC), alleges that S.B. 261 violates the Supremacy Clause of the United States Constitution and is expressly preempted by the National Securities Markets Improvement Act of 1996 (NSMIA). This claim fails as a matter of law.  From a plain reading of NSMIA's text, it is apparent that Congress did not intend to override a state's authority to require companies doing business within its borders to disclose important financial information that the state's consumers, investors, lenders, and other stakeholders may then consider in their economic decision making.  By its plain terms, NSMIA preempts only the state regulation of the "registration or qualification" of securities; of "offering documents" (defined as a Securities Act 'prospectus') prepared by or on behalf of the issuer; of "proxy statement[s]," "report[s] to shareholders," or other "disclosure document[s]" required to be filed with the Commission or a national securities organization; and of "merits" review of "offering[s]" or "issuer[s]."  15 U.S.C. § 77r.  S.B. 261 does not

3

involve state regulation of any of those processes or documents.  The Court should dismiss Plaintiff's third cause of action with prejudice.[1]

## BACKGROUND

### I.    THE CALIFORNIA LEGISLATURE ENACTS S.B. 253 AND 261

In September 2023, the California Legislature enacted S.B. 253 and 261, and Governor Newsom signed the bills into law in October 2023.  Among other things, both bills responded to concerns that California market participants lack standardized, comparable, accurate, and verifiable data about GHG emissions and climate-related risk assessment that is needed to make prudent financial decisions regarding the largest companies doing business in the State.  2023 Cal. Stat., ch. 382 § 1 (S.B. 253); 2023 Cal. Stat., ch. 383 § 1 (S.B. 261).  As the Legislature explained in the text of S.B. 261, "[f]ailure of economic actors to adequately plan for and adapt to climate-related risks to their businesses and to the economy will result in significant harm to California, residents, and investors," including "financially vulnerable Californians who are employed by, live in communities reliant on, or have invested in or obtained financing from these institutions."  2023 Cal. Stat., ch. 383 § 1(c).[2]  In light of these risks to a range of stakeholders, the Legislature concluded that "consistent, higher level, and mandatory disclosures are needed" from both "public and private entities."  *Id.* at § 1(j).

S.B. 253 directs CARB to develop and adopt regulations that will require "reporting entit[ies]" to disclose their GHG emissions to CARB or a designated emissions reporting organization.  Cal. Health & Safety Code § 38532(c)(1). "Reporting entit[ies]" will be those that "do[] business in California" and have total annual revenues in excess of $1 billion.  *Id.* § 38532(b)(2).  Once CARB's implementing regulations are in place, reporting entities will report three categories of GHG

---

[1] Exxon's First Amendment claims are also legally flawed, and Defendants anticipate seeking dismissal of them on summary judgment.
[2] Available at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB261.

4

emissions: Scope 1 and Scope 2 (starting in 2026), and Scope 3 (starting in 2027). *Id.* § 38532(c)(1). Scope 1 emissions are those from sources owned or directly controlled by the reporting entity. *Id.* § 38532(b)(3). Scope 2 emissions encompass indirect emissions associated with the reporting entity's use of electricity, heating, and cooling. *Id.* § 38532(b)(4). Scope 3 emissions include all other indirect emissions, such as those from "purchased goods and services, business travel, employee commutes, and processing and use of sold products." *Id.* § 38532(b)(5). Entities must measure and report all three categories of emissions "in conformance" with the "Greenhouse Gas Protocol standards and guidance," *id.*, a widely accepted protocol for emissions accounting, *Chamber of Com. of U.S. v. California Air Res. Bd.*, No. 2:24-CV-00801-ODW (PVCX), 2025 WL 2337209, at **11-12 (C.D. Cal. Aug. 13, 2025). S.B. 253 "minimizes duplication of effort" by allowing reporting entities to submit emissions data prepared to meet other national and international reporting requirements. Cal. Health & Safety Code § 38532(c)(1)(D)(i). The law requires third-party assurances to ensure the quality and accuracy of the data, *id.* § 38532(c)(1)(F)(i), and makes the data accessible to the public, *id.* § 38532(d)(1), (e)(1).

S.B. 261 requires U.S. entities with total annual revenues in excess of $500 million that "do[] business in California" to prepare biennial reports disclosing climate-related financial risks they have identified and any measures they have adopted to reduce and adapt to those risks. *Id.* § 38533(a)(4)–(b)(1)(A). The bill defines "[c]limate-related financial risk" as the "material risk of harm to immediate and long-term financial outcomes due to physical and transition risks … ," such as disruptions to operations or impacts on employee health and safety. *Id.* § 38533(a)(2). The law directs entities to prepare their disclosures in alignment with "the Final Report of Recommendations of the Task Force on Climate-related Financial Disclosures" (TCFD), *id.* § 38533(b)(1)(A)(i), a widely adopted investor-driven protocol. *Chamber of Com.*, 2025 WL 2337209, at **2, 10. Under the TCFD, "risks" and "financial impacts" subject to disclosure include "[i]ncreased operating costs," "[r]educed demand for products

5

and services," "change in revenue mix and sources," "[i]ncreased production costs due to changing input prices," and "[i]ncreased insurance premiums."  ECF No. 13-5 at 19-20.[3]  In complying with S.B. 261, entities need not adopt any particular climate-related risk management strategy or take any particular climate-risk mitigation actions.  *See Chamber of Com.,* 2025 WL 2337209, at *2 (describing scope of disclosure).  Each reporting company must publish a copy of the report "on its own internet website."  Cal. Health & Safety Code § 38533(c)(1).

The first disclosures required by S.B. 261 are due on January 1, 2026.  Cal. Health & Safety Code § 38533(b)(1)(A).  There is no current specific deadline for covered entities to submit their data under S.B. 253.  The statute provides that Scope 1 and Scope 2 emissions reports will be due later in 2026 "on or by a date to be determined by the state board."  *Id.* § 38532(c)(2)(A)(i)(I).  CARB is now undertaking a rulemaking process through which CARB proposes to identify a first-year reporting deadline in 2026 for Scope 1 and 2 emissions.  Scope 3 reporting will not begin until 2027. *Id.* § 38532(c)(2)(A)(i)(II).

## II.    EXXON COMMENCES THIS ACTION

On October 24, 2025, Exxon filed its complaint in this case against Lauren Sanchez, in her official capacity as Chair of the California Air Resources Board, Steven S. Cliff, in his official capacity as Executive Officer of the California Air Resources Board, Matthew Botill, in his official capacity as Division Chief of the Industrial Strategies Division of the California Air Resources Board, Sydney Vergis, in her official capacity as Assistant Division Chief of the Industrial Strategies Division of the California Air Resources Board, and Robert A. Bonta, in his official capacity as Attorney General of California.  ECF No. 1 (Complaint).  The parties later jointly stipulated to dismissal of Defendants Botill and Vergis without prejudice.  ECF No. 26.

_____

[3] "A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The "TCFD Report" meets these qualifications. *See* ECF No. 1 (Complaint) ¶¶ 45-47.

6

The gravamen of Exxon's complaint is that S.B. 253 and 261 violate the First Amendment by compelling Exxon to make statements with which it disagrees related to the allegedly "controversial" topic of climate change.  ECF No. 1 ¶¶ 1, 53-79.  The complaint also alleges that S.B. 261 violates the Supremacy Clause, and is preempted by NSMIA.  *Id.* ¶¶ 80-82.

Plaintiff has since moved for a preliminary injunction and a temporary restraining order prohibiting Defendants from implementing or enforcing S.B. 261, codified at Cal. Health & Safety Code § 38533.  ECF Nos. 10, 16.  Defendants have moved to transfer this case to the Central District of California, given the close relationship between the questions presented in this matter and those presented in *Chamber of Commerce v. Cal. Air Res. Bd.*, No. 2:24-cv-801-ODW (C.D. Cal.), filed nearly two years ago; or, in the alternative, to stay this case pending resolution of appellate proceedings in *Chamber of Commerce v. Randolph,* No. 25-5327 (9th Cir.), since many of the same questions presented will be heard on appeal—and potentially resolved in a precedential decision—in the coming months.  ECF No. 13.

## LEGAL STANDARD

Under Rule 12(b)(6), a complaint fails "to state a claim to relief" when it lacks either "a cognizable legal theory or … sufficient facts alleged under a cognizable legal theory."  *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (citation and internal quotation marks omitted).  The Court must generally "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs," but need not "accept as true allegations that contradict matters properly subject to judicial notice" or "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Sci. Sec. Litig.*, 536 F.3d. 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).  Courts also "need not accept as true legal conclusions couched as factual allegations."  *Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021).

7

Dismissal without leave to amend is appropriate when deficiencies in the complaint could not possibly be cured by amendment. *See Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

## ARGUMENT

### I.  PLAINTIFF'S THIRD CLAIM, REGARDING NSMIA, SHOULD BE DISMISSED

Plaintiff's claim that NSMIA preempts S.B. 261 fails as a matter of law. While under the U.S. Constitution's Supremacy Clause (art. VI, cl. 2), a federal enactment may expressly or implicitly preempt state law, *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990), "a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption," *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Thus, preemption analysis begins "with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1234 (9th Cir. 2023). Here, Plaintiff fails to establish that Congress intended to—much less had a "clear and manifest purpose" to—override a state's authority to require companies doing business within its borders to disclose important financial information that the state's consumers, investors, lenders, and other stakeholders may then consider in their economic decision making. This claim should be dismissed without leave to amend. *Id.*

### A.  NSMIA Does Not Occupy the Field of Corporate Disclosures

Plaintiff's complaint does not allege that NSMIA occupies the field of corporate financial disclosures, and for good reason. As one court aptly observed, "[f]ew statutes possess the 'extraordinary pre-emptive power' required to occupy a field of law so entirely as to characterize any claims arising thereunder as federal," and "NSMIA is not one of those few." *Zuri-Invest Agzuri-Invest AG v. Natwest Fin. Inc.*, 177 F. Supp. 2d 189, 195 (S.D.N.Y. 2001) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)); *see also A.S. Goldmen & Co. v. New Jersey Bureau of Sec.* 163

F.3d 780, 782 (3d Cir. 1999) (noting that NSMIA did not entirely displace state securities regulation).

To begin, "[i]t is well-settled that federal law does not enjoy complete preemptive force in the field of securities." *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1107 (4th Cir. 1989). Federal securities regulation was designed "to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953). Generally, unless an exemption applies, federal law makes it unlawful for an issuer to offer or sell securities in interstate commerce without a registration statement in effect with the U.S. Securities and Exchange Commission (SEC) containing information delineated by federal law. *See* 15 U.S.C. §§ 77e, 77g; Reg. S-K, 17 C.F.R. pt. 229; Reg. S-X, 17 C.F.R. pt. 210.

When Congress enacted the Securities Act in 1933, "forty-seven states had some form of securities laws in force," many of which required state registration and substantive review before a securities offering could be effectuated in that state. *North Star Int'l v. Az. Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983).[4] The federal securities laws left this dual federal-state regulatory system in place. *North Star*, 720 F.2d at 583.

With NSMIA "Congress recognized the redundancy and inefficiencies inherent in such a system" and "preclude[d] states from requiring issuers to register or qualify certain securities with state authorities." *Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 108 (2d Cir. 2001). But NSMIA left intact the remainder of state securities laws–to say nothing of the myriad other types of business disclosure laws that states historically enact "under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 756 (1985) (cleaned up).

--------

[4] *See generally* Declaration of Katherine Gaumond, Ex. 1 (a report from the SEC regarding state registration and merit review laws at the time of NSMIA's enactment).

9

**B.     NSMIA Does Not Expressly Preempt State Corporate Disclosures**

A plain reading of 15 U.S.C. § 77r, on which Plaintiff relies, confirms that Congress did not preempt state business-disclosure laws like S.B. 261.[5] *See* Compl. ¶¶ 81-82.  NSMIA preempts state regulation of the "registration or qualification" of securities; of "offering documents" (defined as a Securities Act "prospectus") prepared by or on behalf of the issuer; of "proxy statements," "report[s] to shareholders," or other "disclosure document[s]" required to be filed with the Commission or a national securities organization; and of "merits" review of "offerings" or "issuers."  15 U.S.C. §§ 77r(a), (d)(1).

S.B. 261 does not apply to any of those securities-related activities or federal securities filings.  S.B. 261 does not require the registration, review, or qualification of

---

[5] SEC. 18 EXEMPTION FROM STATE REGULATION OF SECURITIES OFFERINGS.
(a) SCOPE OF EXEMPTION.—Except as otherwise provided in this section, no law, rule, regulation, or order, or other administrative action of any State or any political subdivision thereof—
(1) requiring, or with respect to, a registration or qualification of securities, or registration or qualification of securities transactions, shall directly or indirectly apply to a security that—
(A) is a covered security; or
(B) will be a covered security upon completion of the transaction;
(2) shall directly or indirectly prohibit, limit, or impose any conditions upon the use of—
(A) with respect to a covered security described in subsection (b), any offering document that is prepared by or on behalf of the issuer; or
(B) any proxy statement, report to shareholders, or other disclosure document relating to a covered security or the issuer thereof that is required to be and is filed with the Commission or any national securities organization registered under section 15A of the Securities Exchange Act of 1934, except that this subparagraph does not apply to the laws, rules, regulations, or orders, or other administrative actions of the State of incorporation of the issuer; or
(3) shall directly or indirectly prohibit, limit, or impose conditions, based on the merits of such offering or issuer, upon the offer or sale of any security described in paragraph (1).
Pub. L. No. 104-290 (Oct. 11, 1996), codified at 15 U.S.C. § 77r.

10

a securities offering.  15 U.S.C. § 77r(a)(1).  When S.B. 261 takes effect on January 1, 2026, public companies will still register their securities offerings with the SEC as they do now, without limitation or restriction.  Nor does S.B. 261 "prohibit, limit, or impose any conditions upon the use of … any offering document", *id.* § 77r(a)(2)(A), or on "any proxy statement, report to shareholders, or other disclosure document relating to a covered security or the issuer thereof that is required to be and is filed with the Commission," *id.* § 77r(a)(2)(B).  S.B. 261 is also not specific to "a covered security," 15 U.S.C. § 77r(a)(1)(A), but includes both "public *and private*" companies that meet the revenue threshold, 2023 Cal. Stat., ch. 383 § 1(j) (emphasis added).  And S.B. 261 serves multiple purposes in addition to providing investors with climate-related financial information; it was also adopted to protect California and its residents from the "significant harm" caused by the "[f]ailure of economic actors to adequately plan for and adapt to climate-related risks to their businesses," including, but not limited to, "financially vulnerable Californians who are employed by, live in communities reliant on, or have invested in or obtained financing from these institutions."  2023 Cal. Stat., ch. 383 § 1(c).

Despite the many ways in which S.B. 261 is distinct from securities laws potentially subject to NSMIA preemption, Plaintiff's complaint lays out a novel and flawed theory for NSMIA preemption through a series of conclusory allegations.  Exxon's complaint alleges that, by prohibiting state laws that "'prohibit, limit, or impose any conditions upon the use of' … 'disclosure document[s] relating to a covered security … that is required to be and is filed with the [SEC]," 15 U.S.C. § 77r(b), NSMIA preempts "states from imposing enhanced investor reporting requirements—beyond the reports federal law already requires public companies to file with the SEC—concerning 'covered securities.'"  Compl. ¶ 81.  Under this theory, the complaint alleges, NSMIA preempts S.B. 261 because "S.B. 261 would impose additional investor reporting requirements on ExxonMobil."  *Id.* ¶ 82.

11

The complaint's "conclusory allegations of law and unwarranted inferences are insufficient to avoid dismissal." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (cleaned up).  For one thing, requiring Plaintiff to post a report on its website assessing the company's climate risk profile does not "limit, or impose … conditions upon the use of" Plaintiff's SEC filings.  Underscoring this point, Exxon does not explain *how* it would have to alter any of its SEC filings–because it need not do so to comply with S.B. 261.  Put another way, alleging that S.B. 261 "would impose additional investor reporting requirements on ExxonMobil," Compl. ¶82, in no way demonstrates that S.B. 261 would "limit, or impose any conditions upon the use of" any "disclosure document[] relating to a covered security" required to be filed with the SEC, 15 U.S.C. § 77r(a)(2)(B).  S.B. 261 applies whether or not a company offers covered securities or files federal disclosure documents, and it does not require companies to add to or subtract from what those federal disclosure documents must contain.  Nor does the law condition the ability of Plaintiff (or any other company) to offer covered securities for sale in California or elsewhere.  S.B. 261 merely requires certain companies to post on their websites climate risk reports entirely independent of any federal securities disclosures that some of those companies make.

Moreover, if Congress had wanted to preempt state laws establishing additional, separate financial reporting requirements for issuers, Congress knew how to do so.  In Section 103 of NSMIA, Congress amended Section 15 of the Securities Exchange Act of 1934 to prohibit states from "establish[ing] … financial or operational reporting requirements for brokers, [and] dealers … that differ from, or are in addition to, the requirements in those areas established under" these provisions.  Pub. L. No. 104-290, 110 Stat. 3416, 3420-21 (Oct. 11, 1996), codified at 15 U.S.C. § 78o(i)(1).  This provision, which also prohibited states from establishing books and records requirements for broker-dealers, was found to expressly preempt a state regulation that "require[d] broker-dealers to make and keep record[s] that differ from–and are in

12

addition to–federal requirements." *SIFMA v. Ashcroft*, 745 F. Supp. 3d 783, 793-94 (W.D. Mo. 2024).

But no provision of NSMIA–not § 77r(a) or elsewhere–similarly prohibits a state from "establishing financial or operational reporting requirements" *for issuers*. That distinction is fatal to Plaintiff's preemption claim. "Where Congress includes particular language in one section of a statute but omits it in another, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (cleaned up). Plaintiff's allegations provide no plausible basis to conclude to the contrary.

### C. Exxon Identifies No Conflict Between S.B. 261 and Federal Law

Plaintiff does not allege that compliance with federal and state law is "a physical impossibility," or that S.B. 261 would so frustrate "the accomplishment and execution of the full purposes and objectives of Congress" that it must give way to federal law. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 158 (1978) (cleaned up). Plaintiff's complaint does not identify any such conflict. Rather, the complaint alleges that S.B. 261 will require it to make "enhanced" disclosures or disclosure "additional" to those beyond the company currently includes in its SEC filings. Compl. ¶¶ 81-82. That is of no matter; since "it is possible to comply with both" sets of requirements, there is no actual conflict. *North Star*, 720 F.2d at 583. Plaintiff does not contend otherwise.

### CONCLUSION

For the reasons described above, Defendants respectfully request that the Court dismiss Exxon's third claim for relief for violation of the Supremacy Clause without leave to amend.

Dated:  November 18, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
LAURA J. ZUCKERMAN
Supervising Deputy Attorneys General
CAITLAN MCLOON
Deputy Attorney General


*/s/ Katherine Gaumond*

KATHERINE GAUMOND
Deputy Attorney General
*Attorney for Defendants*

14