1  DAWN SESTITO (S.B. #214011)
   dsestito@omm.com
2  JONATHAN SCHNELLER (S.B. #291288)
   jschneller@omm.com
3  LAUREN KAPLAN (S.B. #294703)
   lkaplan@omm.com
4  O'MELVENY & MYERS LLP
   400 South Hope Street, 19th Floor
5  Los Angeles, California  90071-2811
   Telephone:   (213) 430-6000
6  Facsimile:    (213) 430-6407

7  *Counsel for Plaintiff Exxon Mobil Corporation*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EXXON MOBIL CORPORATION,<br><br>           Plaintiff,<br><br>     v.<br><br>LAUREN SANCHEZ, in her official capacity as Chair of the California Air Resources Board, et al.,<br><br>           Defendants. | Case No. 2:25-CV-03104-DJC-JDP<br><br>**PLAINTIFF EXXON MOBIL CORPORATION'S SUR-REPLY TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:   January 22, 2026<br>Time:   1:30 p.m.<br>Courtroom: 7<br>Judge:   Daniel J. Calabretta<br><br>Trial Date:  TBD<br>Action Filed:  October 24, 2025 |

**ARGUMENT**

Confronted with the implausibility of their contention that 15 U.S.C. § 77r(a)(2)(B) preempts only state laws forcing companies to *alter* SEC-mandated disclosures,[1] Defendants' Reply in Support of their Motion To Dismiss ("Reply") pivots to a new argument: That § 77r(a)(2)(B) preempts only laws interfering with the use of proxy statements, shareholder reports, and similar disclosures in the context of "registration and qualification of securities offerings." ECF No. 40 at 2; *see id.* at 4-12. That proposed limitation contravenes the statute's text and would impermissibly render the provision meaningless, since the "covered securities" at issue are not subject to state registration and qualification obligations, and even if they were, the relevant federal disclosures would have no real-world "use" in that context.

Defendants' new argument fails at the outset because it lacks any textual basis. Section 77r(a)(2)(B) states in sweeping terms that "no law . . . of any State . . . shall directly or indirectly prohibit, limit, or impose any conditions on the use of . . . any proxy statement, report to shareholders, or other disclosure document relating to a covered security or the issuer thereof that is required to be and is filed with the Commission." Congress did not limit that capacious prohibition to laws regulating the use of such documents "for securities registration or qualification." And, as Defendants' own authorities confirm, the provision's placement in the Securities Act cannot furnish that missing textual limitation. Just as in *United States v. Naftalin*, "[n]othing on the face of the statute supports [Defendants'] reading"; rather, the "statutory terms . . . are expansive enough to encompass" non-registration, non-qualification uses such as ExxonMobil's use of its 10-K to disclose business risks to investors and the public. 441 U.S. 768, 772-73 (1979). As Defendants' other newly cited authority puts it, "the absence of limiting language . . . resulted in broad coverage" regardless of § 77r's codification in the Securities Act. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 577 (1995); *see, e.g.*, *United States v. Fei Ye*, 436 F.3d 1117, 1120 (9th Cir. 2006) ("If the plain language of a statute renders its meaning

---

[1] ECF No. 28, at 12; ECF No. 38, at 1-2, 10-11.

1  reasonably clear, [we] will not investigate further unless its application leads to
2  unreasonable or impracticable results.").

3  Congress did not include such a limitation because such a limitation would serve no
4  purpose. As an initial matter, the immediately preceding provision prohibits states from
5  applying laws "requiring . . . registration or qualification of securities, or . . . securities
6  transactions" to covered securities. § 77r(a)(1)(A). For securities subject to § 77r(a)(2)(B),
7  that prohibition categorically eliminates the very registration and qualification processes
8  that Defendants maintain are § 77r(a)(2)(B)'s exclusive focus. Congress would not have
9  crafted a provision whose sole function is to protect the use of SEC-filed disclosure
10 documents in processes that the immediately preceding provision eliminates. *See TRW Inc.*
11 *v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a
12 statute ought, upon the whole, to be so construed that, if it can be prevented, no clause,
13 sentence, or word shall be superfluous, void, or insignificant.") (cleaned up).

14 Moreover, even if covered securities were still subject to state registration and
15 qualification, Defendants identify no function that that § 77r(a)(2)(B) would serve in that
16 setting. Registration and qualification are state-law processes by which newly issued
17 securities are made eligible for sale in a state. By contrast, proxy statements and
18 shareholder reports by definition pertain only to securities *that are already offered for sale*.
19 The same is true for the "other disclosure document[s]" subject to § 77r(a)(2)(B), both
20 because preemption for "offering document[s]" is separately addressed in § 77r(a)(2)(A),
21 and because the phrase "other disclosure document" culminates a list whose other two
22 members (proxy statements and shareholder reports) describe disclosures for already-
23 traded securities. *See Oracle Int'l Corp. v. Rimini Street, Inc.*, 123 F.4th 986, 994-95 (9th Cir.
24 2024) ("when several items in a list share an attribute, [the noscitur a sociis canon] favors
25 interpreting the other items as possessing that attribute as well") (cleaned up). Defendants
26 fail to offer a plausible account of what function Congress intended such *post-offering*
27 disclosures to play in the registration and qualification processes that *precede* a security's
28 offering.

Defendants posit just two "uses" of such disclosures that would be preempted under their reading, but both are purely imaginary. First, Defendants argue that Congress intended to protect the use of such disclosure documents to "demonstrat[e] that an offering is exempt from state registration"—i.e., that it is a "covered security" under NSMIA—"by virtue of the security or transactions being exempt from federal registration." ECF No. 40 at 6; *see* 15 U.S.C. § 77r(b)(4) (defining "covered security" status of securities exempt from federal registration); *Brown v. Earthbound Sports USA, Inc.*, 481 F.3d 901, 912 (6th Cir. 2007) (cited by Reply at 6). But proxy statements, shareholder reports, and similar disclosure documents provide company-level information, not the transaction-level information required to establish registration exemption for a given securities offering. *Compare, e.g.*, 17 C.F.R. § 230.506 (criteria for exemptions) *with* 17 C.F.R. § 240.14a-101 ("Information required in proxy statement."). Defendants do not even try to explain why or how an issuer would use such documents to establish a federal registration exemption. Further, this proposed "use" would render § 77r(a)(2)(B) entirely circular: The provision applies only to "covered securities," so reading it as regulating the process by which parties prove securities are "covered"—in Defendants' scenario, by establishing a federal registration exemption—would create a fatal bootstrapping problem. *See id.*; § 77r(b)(4).

Second, Defendants argue that § 77r(a)(2)(B) protects the "use" of proxy statements, shareholder reports, Form 10-Ks, and the like, "to satisfy a state's notice filing requirement or to provide 'the value of securities sold or offered . . . to persons located in the State' for 'assessment of [a] fee.'" ECF No. 40 at 6. The argument fails for similar reasons. The relevant disclosure documents do not break down securities sales by state. *See* Schneller Decl. Ex. A (Exxon Mobil Corp., Annual Report (Form 10-K) (Feb. 19, 2025)); *id.* Ex. E (SEC, Office of Investor Education and Advocacy, Investor Bulletin: How to Read a 10-K (Sept. 2011)). Nor can such documents, which are filed with the SEC under Title 15, Chapter 2B, satisfy state requirements for notice "filing of any document filed with the Commission pursuant to *this subchapter*," i.e., Chapter 2A, Subchapter I. 15 U.S.C. § 77r(c)(2)(A) (emphasis added). Protecting the "use" of such disclosures to comply with the state notice

filing obligations would "accordingly accomplish[] nothing." *Doe v. Chao*, 540 U.S. 614, 623 (2004).

Defendants' new argument thus asks the Court to accept that Congress silently limited § 77r(a)(2)(B) to a registration and qualification context that the same statute renders inapplicable—one in which the post-offering disclosure documents addressed by the provision have no conceivable role to play. Basic statutory interpretation principles preclude grafting an unwritten limitation onto § 77r(a)(2)(B) that would leave § 77r(a)(2)(B) "with no job to do." *Doe*, 540 U.S. at 623. The Court should interpret the provision by its plain terms, hold that § 77r(a)(2)(B) expressly preempts state laws unabashedly augmenting the core investor-disclosure function of ExxonMobil's Form 10-K, and deny Defendants' Motion.

Dated: January 16, 2026                    O'MELVENY & MYERS LLP

By: */s/ Jonathan Schneller*
DAWN SESTITO
JONATHAN P. SCHNELLER
LAUREN KAPLAN
400 South Hope Street, 19th Floor
Los Angeles, California  90071-2811
Telephone: (213) 430-6000
Facsimile: (213) 430-6407

*Counsel for Plaintiff Exxon Mobil Corporation*